IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA ANNE MEACHAM,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

Case No. 6:14-cv-01108-SI

**OPINION AND ORDER**

Kathryn Tassinari and William Critchlow, Harder, Wells, Baron & Manning, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97201-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

        Jessica Anne Meacham ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). For the following reasons, the Commissioner's decision is REVERSED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance . . . ." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed applications for DIB and SSI benefits on July 26, 2011, alleging disability beginning on July 28, 2010. AR 243. She was 25 years old at the alleged disability onset date. *See id.* On July 27, 2010, while working as a bank teller, Plaintiff was robbed at gun point. AR 76, 384. This was the second robbery she experienced during the time

that she worked at the bank. AR 76. Because of this experience, Plaintiff alleges disability due to the following symptoms: post-traumatic stress disorder, social anxiety disorder, panic attacks, migraines, severe depression, constant feelings of impending doom while in public, difficulty sleeping accompanied with nightmares, and chronic back pain. AR 247. The Disability Determinations Services denied her applications initially on January 6, 2012 and upon reconsideration on April 26, 2012. AR 171-84. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 185-87. An administrative hearing was held on July 3, 2013. AR 56. After considering all the evidence in the record, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. AR 23-32. The Appeals Council considered the record, including additional evidence submitted, but declined to review the decision, making the ALJ's decision the final order of the Commissioner. AR 1-2. Plaintiff now seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. *Id.* §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Unless expected to result in death, an impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. *Id.* §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146 n.5. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began her opinion by noting that Plaintiff met the insured status requirements of

the Social Security Act through December 31, 2016. AR 23. The ALJ then applied the sequential

process. AR 23-32. At step one, the ALJ determined that Plaintiff was engaged in substantial

gainful activity from July 28, 2010 through July 26, 2011. During this time she earned an income

of more than $1,000 per month while working as a bank teller, without any special work

conditions, therefore qualifying as substantial gainful activity. AR 23. After July 26, 2011,

however, there has been a continuous 12-month period during which Plaintiff was not engaged in

substantial gainful activity. AR 24. At step two, the ALJ determined that Plaintiff's depressive

disorder, panic disorder with agoraphobia, post-traumatic stress disorder, and obsessive-

compulsive disorder were severe impairments. *Id.* At step three, the ALJ determined Plaintiff's

impairments do not meet or medically equal the severity of one of the listed impairments.

AR 24-25.

PAGE 5 – OPINION AND ORDER

The ALJ then determined Plaintiff's residual functional capacity ("RFC"). AR 26. Here, the ALJ found:

> [Plaintiff could] perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should avoid concentrated exposure to irritants such as fumes, odors, dust, gases, poorly ventilated areas. Work is limited to one or two-step tasks, as the claimant can understand and carry out simple instructions. The claimant should be exposed to few, if any, workplace changes with no work-related travel outside the workplace. There should be no interaction with the public and occasional interaction with co-workers and supervisors.

*Id.* At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work because of her limitations. AR 31. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy including addresser, label marker, and paper goods inserter. AR 32. Consequently, the ALJ determined that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) rejecting Plaintiff's testimony; (B) failing to adequately consider lay evidence from Michael Cundiff; (C) rejecting the opinion of Dr. Judith Eckstein; and (D) finding at step five that Plaintiff retains the ability to perform other work in the national economy.

## A.  Credibility of Plaintiff

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504

F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1997.

In assessing Plaintiff's RFC, the ALJ rejected part of Plaintiff's testimony. AR 26-31. Specifically, the ALJ found that the evidence supported a finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ rejected Plaintiff's testimony regarding "intensity, persistence and limiting effects." AR 27. The ALJ arrived at this conclusion because "the evidence in the record does not support the testimony in terms of frequency of attacks." *Id.* At the hearing, Plaintiff claimed that near the end of her time at the bank she was having five to ten panic attacks per day and would step away from her station up to twenty times per day to control her symptoms. AR 26, 63, 68. The ALJ determined that the testimony was inconsistent with Plaintiff's reports to her medical providers either during her time at the bank or anytime after she quit. AR 27-31.

The ALJ then discussed the medical evidence in the record, specifically evidence from Dr. Brian Jones, M.D., Dr. Donna Givens, M.D., and Ms. Jo Chambers, M.A., L.P.C., during the time Plaintiff was still employed. AR 28. The ALJ noted that, with Dr. Jones, Plaintiff "reported

only 'occasional' panic attacks and little use of Xanax[.]" *Id.* (citing AR 381). With Dr. Givens,

Plaintiff mentioned "increasing panic attacks but there was no particular frequency stated[.]" *Id.*

(citing AR 380). Additionally, "with Dr. Givens and Ms. Chambers, [Plaintiff] reported having

only a few instances of 'early' panic attack but no full attacks and dealing with anxiety

successfully to avoid the attacks[.]" *Id.* (citing AR 341, 343, 374). Plaintiff "told Dr. Givens she

had not had a panic attack in several weeks and a couple weeks later that she had only one in a

restaurant when she felt trapped[.]" *Id.* (citing AR 355-56). The ALJ then concluded that

"nowhere in these records contemporaneous to the time when she was still working does the

claimant assert she was having multiple panic attacks daily and it appears there is only one report

of needing to leave her window due to symptoms[.]" *Id.* (citing AR 354).

       In considering the ALJ's explanation for rejecting Plaintiff's testimony regarding the

frequency of her panic attacks during the time she worked at the bank, as well as Plaintiff's

medical records for this time, the Court finds that the ALJ provided a specific, clear, and

convincing reason for rejecting Plaintiff's testimony. The ALJ discussed the relevant sections of

the record and expressly noted incidents mentioning panic attacks and reports of Plaintiff leaving

her window. *Id.* The ALJ then accurately characterized the medical records regarding the panic

attacks. *Id.* Plaintiff discussed her panic attacks with Dr. Jones, Dr. Givens, and Ms. Chambers

while she was working at the bank. Before leaving the bank, Plaintiff characterized her panic

attacks as "occasional," reported going weeks without panic attacks, and frequently mentioned

being able to control her "early" panic attacks before they "escalated to the point of a full-blown

panic attack" by recognizing early symptoms and using self-calming techniques. AR 338-43,

345, 354, 374, 381. Plaintiff failed to mention to her doctors a single panic attack that occurred at

work during the month before she quit, but simply mentioned stressors and controlling her

symptoms. AR 348-50, 354-55. Additionally, when Plaintiff mentioned an "increase" in panic attacks she stated this in the context of the panic attacks previously being "infrequent." AR 380. The ALJ determined that an "increase" in frequency did not rise to the level of five to ten panic attacks per day at work, and the ALJ's conclusion is reasonable in light of Plaintiff's reports that she went weeks without having panic attacks.

Although the ALJ's determination that "it appears there is only one report of needing to leave her window due to symptoms" is somewhat inaccurate, the evidence still supports the ALJ's conclusion that Plaintiff likely did not step away from her window up to 20 times per day. AR 26, 28 (citing AR 354). In addition to the one medical report that the ALJ cited, there are other instances in the record where Plaintiff discussed stepping away from her station. *See* AR 349, 380. In February 2011, Plaintiff mentioned increasing panic attacks and stated that "[s]he has them at work but usually her coworkers lead her into a back room to try to calm her down at that point." AR 380. In June 2011, Plaintiff said "that she has had to step into the back room at work quite often in order to avoid having a full blown panic attack at work." AR 354. Later in June, Plaintiff noted that the manager told her "she is not to leave her window if she feels a panic attack coming on." AR 349. The ALJ failed to include two of these incidents in her discussion, but the Court finds that this omission is harmless. The incidents the ALJ failed to discuss do not state how many times Plaintiff left her window per day. Thus, the ALJ's interpretation of the evidence as not supporting that Plaintiff left her window multiple times each day is rational. At most, these reports support a possible second rational interpretation of the evidence—that Plaintiff was reporting a need to leave her window sometimes—but "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

**B.  Lay Evidence from Michael Cundiff**

Plaintiff argues that the ALJ improperly discounted the third-party function report from Plaintiff's husband, Michael Cundiff. AR 256-63. Mr. Cundiff submitted the report in September 2011, describing his relationship with Plaintiff, as well as discussing her illness, daily living activities, abilities, and limitations. *Id.*

Although lay witnesses are not competent to testify to medical diagnoses, they may testify and provide competent evidence regarding a claimant's symptoms or how an impairment affects a claimant's ability to work. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Thus, an ALJ cannot reject a lay person's testimony without comment. *Nguyen*, 100 F.3d at 1467. To reject lay testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. Further, "the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*, 454 F.3d at 1053).

The Ninth Circuit has discussed the reasons for allowing lay witness testimony:

> Although eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether [the claimant] is disabled or malingering, we have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition.

*Dodrill*, 12 F.3d at 918-19. Therefore, "'[d]isregard of this evidence violates the Secretary's regulation that he [or she] will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work.'" *Id.* at 919 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) and citing 20 C.F.R. § 404.1513(d)-(e)); *see also Bruce*, 557 F.3d at 1116 ("A lay person, [a claimant's] wife, though not a vocational or medical expert, was

not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities.") (citing 20 C.F.R. § 404.1513(d)(4)).

The ALJ briefly discussed the third-party function report from Mr. Cundiff. AR 27 (citing AR 256-63). The ALJ noted that Mr. Cundiff had known Plaintiff for seven years and that they spent much time together before the alleged onset date. *Id.* The ALJ mentioned that Mr. Cundiff "wrote that the claimant had difficulty determining whether people were 'safe' or 'threatening' and would have anxiety leading to panic attacks." *Id.* Mr. Cundiff further stated that "Xanax was helpful but 'renders her useless in a work environment.'" *Id.* The ALJ discussed how Mr. Cundiff indicated that Plaintiff "watched television and played video games all day" and how he felt like he was the "primary care giver for the pets." *Id.* After this discussion, the ALJ concluded: "This third party statement regarding the claimant's limitations is accepted as descriptive of Mr. Cundiff's perceptions; however, it does not support an inability to sustain any work activity." *Id.*[1]

The ALJ failed to fully discuss some of the symptoms to which Mr. Cundiff testified but still concluded Mr. Cundiff's testimony "does not support an inability to sustain any work activity." AR 27. In the function report, Mr. Cundiff discussed Plaintiff's illness, her daily living activities, and her abilities. Regarding her illness, in addition to what the ALJ mentioned, Mr. Cundiff stated that Plaintiff "gets anxious to the point of hyperventilation, screaming and pulling her hair." AR 256.

Regarding Plaintiff's daily living activities, Mr. Cundiff discussed the many changes in Plaintiff's activities after her illness began. First, he noted that Plaintiff "no longer can shop,

---

[1] Although the ALJ claimed that she "accepted [Mr. Cundiff's testimony] as descriptive," the ALJ essentially rejected the testimony because she did not consider the testimony when determining Plaintiff's limitations in the RFC. *See* AR 26-31 (partially discussing Mr. Cundiff's testimony but not considering it when determining Plaintiff's RFC).

work or go out in public anymore" and that "she has intense nightmares all the time." AR 257.

Second, he mentioned how Plaintiff's ability to care for herself and others has diminished over

time. AR 257-58. Specifically, in addition to Mr. Cundiff being the "primary provider" for the

cats and dog, he stated that Plaintiff now only cooks two to three meals per month, whereas she

used to cook a meal daily. *Id.* Moreover, he claimed that "she can't be without either

[Mr. Cundiff] or Morgen [the service dog]" and she does not shop in stores. AR 259. Third, he

described how her hobbies and interests changed after her illness began, noting that "she used to

hunt, fish, sew, make jewelry, go for bike rides/walks/hikes, go camping, go to movies, go to

parks, [and go to] restaurants." AR 260. He stated, however, that "*she does none of* this now!!"

*Id.* (emphasis in original). Instead, she now "'chats' on X-Box 'live'" and her phone "all day,

everyday." *Id.*

      Finally, Mr. Cundiff discussed some additional limitations regarding Plaintiff's abilities.

He stated that Plaintiff "is unable to communicate her need[s]" to "anyone besides

friends/family" because "she is defensive and sometimes hostile to people when they try and

help her." AR 261. Mr. Cundiff noted that Plaintiff does not get along with authority figures well

or follow spoken instructions well. *Id.* Additionally, he stated that Plaintiff does not handle stress

or changes to her routine well. AR 262. Lastly, Mr. Cundiff discussed the side effects of Plaintiff

taking Xanax as "euphoric," making her "unable to converse or complete (comprehend) anything

complex or 'deep.'" *Id.*

      This in-depth report of Plaintiff's functional abilities discussed Mr. Cundiff's

observations of Plaintiff, including her symptoms, limitations and abilities, and daily living

activities. Despite this thorough report, the ALJ simply credited Mr. Cundiff's report as his

"perceptions" but concluded that it "does not support an inability to sustain any work activity."

AR 27. Although the ALJ purports to credit Mr. Cundiff's report, the ALJ did not appear to

consider Mr. Cundiff's testimony regarding Plaintiff's symptomology and limitations when

determining her RFC. The ALJ, however, does not provide any explanation for this failure. Thus,

the ALJ erred in rejecting Mr. Cundiff's testimony without providing a reason germane to

Mr. Cundiff. *See Dodrill*, 12 F.3d at 918-19; *Bruce*, 557 F.3d at 1116.

## C.  Medical Opinion of Dr. Eckstein

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting the

opinion of Judith Eckstein, Ph.D. Dr. Eckstein is a licensed psychologist who provided Plaintiff

with a psychological evaluation in June 2013. AR 478-89. A licensed psychologist is an

"acceptable medical source" for the purposes of establishing medical impairments. 20 C.F.R.

§§ 404.1513(a)(2), 416.913(a)(2).

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among medical source opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164

(9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of medical

sources: treating sources, examining sources, and reviewing sources, which are non-treating,

non-examining sources that only review the claimant's file. *Holohan v. Massanari*, 246

F.3d 1195, 1201 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating

medical source's opinion carries more weight than an examining source's opinion and an

examining source's opinion carries more weight than a reviewing source's opinion.

*Holohan*, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c), 416.927(c).

If the opinion of an examining medical source is contradicted by another medical source

opinion, the ALJ must provide "specific, legitimate reasons" supported by substantial evidence

in the record for discrediting the examining opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th

Cir. 1995); *Andrews*, 53 F.3d at 1043. In addition, the regulations give more weight to opinions

that are explained than to those that are not and to the opinions of specialists concerning matters relating to their specialty over that of non-specialists. *Holohan*, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c)(3)-(c)(5), 416.927(c)(3)-(c)(5). Specific, legitimate reasons for rejecting a medical source opinion include reliance on a claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Finally, if an ALJ has properly discounted a claimant's self-reporting as incredible, she may also reject an examining medical source's opinion that is based largely on the claimant's own reporting, "with little independent analysis or diagnosis." *Id.* In such a case, the doctor's opinion may properly be assigned the same weight as the claimant's own testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ discussed Dr. Eckstein's psychological evaluation. AR 29-30. After describing Dr. Eckstein's meeting with Plaintiff, the ALJ discussed Dr. Eckstein's findings regarding Plaintiff's limitations. *Id.* Specifically, Dr. Eckstein indicated that Plaintiff has the following "marked" limitations:

> [A]bility to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform within a schedule and maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with or proximity to others; complete a normal workday/week without interruption from symptoms; interact appropriately with the public; accept instructions and respond appropriately to criticism; get along with coworkers; and respond appropriately to changes.

AR 30.

The ALJ then indicated that these limitations, "particularly in maintaining attention and concentration, performing within a schedule, and maintaining regular attendance, are not supported by the record." *Id.* The ALJ noted that "[t]here was nothing in the record to indicate [Plaintiff] would have problems with supervisors and nothing in Dr. Eckstein's own report to

suggest such significant limitations in the context of limitations on task complexity and contact with others." *Id.* Thus, the ALJ gave Dr. Eckstein's findings regarding limitations "limited weight." *Id.*

In contrast to Dr. Eckstein's evaluation, the ALJ gave "substantial weight" to the psychodiagnostic evaluation in December 2011 from Gregory A. Cole, Ph.D. AR 29. The ALJ noted that Plaintiff, in her evaluation with Dr. Cole, reported panic attacks occurring about twice a week, rather than five to ten times per day. *Id.* Dr. Cole ultimately found that Plaintiff had a Global Assessment of Functioning Scale score of 54, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. AR 29, 395. Specifically, Dr. Cole stated that Plaintiff had some problems in attention and concentration but was able to sustain simple routine tasks. AR 29, 396. The ALJ concluded that she gave "this assessment substantial weight and the identified limitations are reflected in the [RFC]." AR 29.

Because Dr. Cole's report contradicted Dr. Eckstein's report, the ALJ needed to provide specific, legitimate reasons to discount Dr. Eckstein's findings. The ALJ provided three reasons: (1) the findings regarding marked limitations in attention and concentration, performing within a schedule, and maintaining regular attendance are not supported by the record; (2) nothing in the record indicates Plaintiff would have problems with supervisors; and (3) nothing in Dr. Eckstein's own report suggests such limitations on task complexity and contact with others. The first two reasons, however, may no longer apply in light of the Court's holding regarding Mr. Cundiff's testimony.

Mr. Cundiff's report is evidence that supports Dr. Eckstein's conclusions. AR 261-62. Specifically, Mr. Cundiff made three statements that are relevant to this issue. First, when asked how Plaintiff's conditions affects her, Mr. Cundiff stated that "[i]f [Plaintiff] has to talk to

anyone besides friends/family, she often is unable to communicate her need. She is defensive and

sometimes hostile to people when they try to help her." AR 261. This statement indicates that

Plaintiff would have a problem with supervisors and contact with others. Second, when asked

how well Plaintiff gets along with authority figures, Mr. Cundiff stated "Not so well." *Id.* This

statement also indicates that Plaintiff would have a problem with supervisors. Finally,

Mr. Cundiff discussed the effects of Xanax on Plaintiff, and stated that "she is unable to converse

or complete (comprehend) anything complex or 'deep.'" AR 262. This statement indicates that

Plaintiff may have problems with attention and concentration while on Xanax.

Because the ALJ failed to address these statements but instead improperly concluded that

nothing in the record supports Dr. Eckstein's statements, the Court finds that the ALJ erred in

rejecting Dr. Eckstein's statements.

**D.  Step-Five Finding**

Plaintiff next argues that the ALJ erred in finding that Plaintiff retains the ability to

perform other work in the national economy at step five because the Commissioner failed to

meet her burden of proof in light of Dr. Eckstein's evaluation and Mr. Cundiff's report regarding

Plaintiff's limitations.

After a claimant proves he or she cannot perform the past relevant work, the burden of

proof shifts to the Commissioner to demonstrate that the claimant can perform other jobs that

exists in "significant numbers" in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25

(2003) (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)). An ALJ can meet

the Commissioner's burden of proof by posing a hypothetical to a VE based on a plaintiff's RFC.

*See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). When determining a plaintiff's RFC,

an ALJ must consider "all of [a claimant's] medically determinable impairments," including

"medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2),

416.945(a)(2). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Similarly, a hypothetical question posed to a VE must "include all the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995). Therefore, if the VE's response to an ALJ's hypothetical does not reflect all of the disability claimant's limitations, including pain, the VE's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

Because the Court finds that the ALJ improperly discounted Mr. Cundiff's testimony and may, therefore, have improperly evaluated Dr. Eckstein's opinion, the ALJ needs to reconsider Plaintiff's RFC. For example, the RFC needs to reflect Mr. Cundiff's statements regarding Plaintiff's hostility and inability to communicate her needs, her failure to get along well with authority figures, and her side effects from Xanax. Because the ALJ's RFC may not have taken all of Plaintiff's limitations into account, the hypothetical posed to the VE similarly may not have reflected all of Plaintiff's limitations. *See Cooper*, 880 F.2d at 1158 n.13. Therefore, the current Step Five determination is invalid and upon remand the ALJ must reevaluate the RFC and perform another step five analysis, as appropriate.

## E.  Credit as True and Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits . . . ." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It was recently described by the United

States Court of Appeals for the Ninth Circuit:

> [The Ninth Circuit has] devised a three-part credit-as-true standard,
> each part of which must be satisfied in order for a court to remand
> to an ALJ with instructions to calculate and award benefits: (1) the
> record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed
> to provide legally sufficient reasons for rejecting evidence,
> whether claimant testimony or medical opinion; and (3) if the
> improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a

calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious

doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for

further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v.*

*Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without

analyzing whether the three factors are met "because, even assuming that they are, we conclude

that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled").

Moreover, when remanding for further development of the record, the district court has the

discretion to remand on an open record or with the directive that the claimant's testimony be

PAGE 19 – OPINION AND ORDER

credited as true. *See Burrell*, 775 F.3d at 1141 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings") (citing *Garrison*, 759 F.3d at 1021).

As explained above, the ALJ failed to provide a legally sufficient reason for discrediting the lay witness testimony of Mr. Cundiff. Because of this failure, the Court credits Mr. Cundiff's testimony as true. Even with this testimony credited as true, however, outstanding issues remain as to whether Plaintiff is disabled. Upon remand, the ALJ must consider Mr. Cundiff's testimony as described in this Opinion and Order and must evaluate Dr. Eckstein's testimony in light of Mr. Cundiff's credited testimony.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for further proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge